THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN ROLIH, Defendant-Appellant.

Third District   No. 3—91—0762

Opinion filed September 4, 1992.

Law Offices of Josette Skelnik, of Elgin (Michael Kalland, of counsel), for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Defendant John Rolih was indicted for the offenses of unlawful possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance. Both counts charged that on or about March 8, 1989, defendant possessed more than 15 but less than 100 grams of a substance containing cocaine.

After a bench trial, defendant was found guilty of the offense of possession with intent to deliver cocaine and the offense of possession of cocaine. He was convicted and sentenced on both counts. On appeal, he alleges that plea-related statements were used against him and that it was error to enter convictions and sentences on both counts. We affirm as to possession with intent to deliver cocaine and vacate as to the offense of possession of cocaine.

At trial, Mark Stevens, an agent with the Division of Criminal Investigation of the Illinois State Police, testified that on March 8, 1989, at 1:30 p.m., pursuant to a search warrant, he searched defendant's residence. Stevens testified that the police seized an envelope containing two plastic bags of white powder, a vial containing white

powder, $490 in currency, and a wallet containing $100 from defendant's trousers. From defendant's coat, they seized a vial containing white powder and a checkbook with $110 currency in it. From under a mattress, they seized a plastic bag containing white powder. Stevens stated that all of the bags except the bag found under the mattress tested positive for cocaine. The agents also seized a rolled-up $1 bill and identification showing that defendant lived at the residence being searched. In the basement, agents found a triple beam scale in a box with defendant's business card for his chauffeuring business, : another triple beam scale inside a leather bag, three empty bottles of inositol, which were near the triple beam scale, a ceramic plate with white residue, a box of clear sandwich bags, and a baggie containing white residue.

Stevens also stated that they found a WD 40 can with a false bottom in the garage. Inside the can were four plastic bags of white powder, which were tested and found to contain cocaine. The powder was also found to contain various combinations of inositol, manitol, and betamanitol. Stevens testified that based on his experience and numerous investigations, it was his opinion that scales such as those seized were frequently used to weigh cocaine, that inositol powder was frequently used to dilute cocaine, and that ceramic plates such as the one seized were commonly used as a surface on which to mix cocaine with another agent.

Stevens also testified that when he showed defendant the WD 40 can and the bags from it, defendant responded that he was surprised that he had so much cocaine left and that he was planning to go buy a larger quantity. He also stated that defendant said that "he wished to cooperate in any way possible for future consideration of the charges that would be pending against him" and that "he would do anything to assist us which would in turn assist him with—in consideration of the charges."

Stevens further testified that after the search was completed, defendant was taken to the police headquarters, where he was given *Miranda* warnings and agreed to answer questions. Stevens testified over objection that defendant told him that he had been using cocaine for five years and had been selling it for three to four months prior to the search. Stevens testified further about the information defendant gave him regarding his cocaine sales. Stevens stated that defendant was released on the night of his arrest due to his offer of cooperation.

On cross-examination, Stevens denied that defendant first said that he would cooperate only after he had been told that agents were going to arrest defendant's wife and put his son in Department of

Children and Family Services (DCFS) custody. Stevens stated that he was unaware that the wife was arrested at 1:45 p.m. that day.

On redirect, Stevens stated that the decision not to arrest defendant on the day of the search was made by an assistant State's Attorney after defendant agreed to cooperate with the State Police officers in developing cases against others. The prosecution tried to adduce evidence of whether defendant had followed through on his promises to cooperate. After defense counsel's objection, the prosecution argued that defendant's indication that he would cooperate was evidence of consciousness of guilt.

Defendant testified that he was 48 years old and resided in Lockport. He acknowledged that he had twice been convicted of a felony and had served time for one of the convictions. He stated that since 1983 he had been involved in a limousine business called "All American Chauffeuring." The business address was defendant's residence. He stated that he used the garage there for the business and that the six drivers and two mechanics had regular access to the garage.

Defendant testified that he began using cocaine in 1984 after his son had been badly burned in an accident. He stated that by March 1989 he used approximately a quarter ounce per day. He admitted that he had been selling cocaine for about four to five months before the arrest to support his personal use. Defendant stated that the cocaine in his pants pockets and coat pocket was what was left of his personal supply of cocaine used at a party.

Defendant further testified that on the day of the search, at the time defendant was shown the cocaine the police seized from his clothes, Jack Townsend, a police sergeant, told him that he either had a real problem or that he would help them out. Defendant stated that he responded that maybe they could work something out. At the house, defendant offered to help solve a murder that had occurred in 1976. Townsend stated that it was not his case and that he would have to talk to the case agent. Defendant denied that he made any statements to Stevens when the police showed him the WD 40 can.

Defendant also testified that defendant heard agents talking about arresting his wife and taking his son to DCFS. Defendant stated that at the station defendant asked Stevens if they had a deal and that Stevens said that they did not because the murder was too old. On cross-examination, defendant testified that the WD 40 can found in the garage with cocaine in it was not his.

In rebuttal, Townsend testified that, during the search, when the WD 40 can and the cocaine inside were shown to defendant, defendant threw up his hands and said "What do you want me to do?" He

also stated that he did not remember defendant telling Stevens that he was surprised that he found so much in his house and that he thought he was almost out.

The court found defendant guilty on both counts I and II. Defendant filed a post-trial motion in which he alleged, among other things, that the court erred in considering plea-related statements. The court ruled that the statements at issue were not plea-related and were properly admitted. The court sentenced defendant to concurrent 15-year terms of imprisonment on the two counts.

Defendant now appeals.

The first issue for review is whether the statements defendant made before his arrest and thereafter at the station house constituted plea-related statements.

Defendant argued in his post-trial motion that the statements that defendant "wished to cooperate in any way possible for future consideration of the charges that would be pending against him" and that "he would do anything to assist us which would in turn assist him with—in consideration of the charges" constituted plea-related statements which were improperly admitted under Supreme Court Rule 402(f) (134 Ill. 2d R. 402(f)).

Supreme Court Rule 402(f) provides as follows:

> "Plea Discussions, Plea Agreements, Pleas of Guilty Inadmissible Under Certain Circumstances. If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 134 Ill. 2d R. 402(f).

The purpose of this rule is to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enters plea discussions at his peril. (*People v. Friedman* (1980), 79 Ill. 2d 341, 351, 403 N.E.2d 229, 235.) The characterization of a defendant's statement as plea-related must turn on the facts of each case. (*Friedman*, 79 Ill. 2d at 351-52, 403 N.E.2d at 235.) The test to determine a plea-related statement is (1) whether the accused exhibited a subjective expectation to negotiate a plea and (2) whether the expectation was reasonable under the totality of objective circumstances. (79 Ill. 2d at 351.) Not all statements made in hopes of some concessions are necessarily plea discussions. *People v. Victory* (1981), 94 Ill. App. 3d 719, 419 N.E.2d 73.

The Second District Appellate Court in *People v. Ward* (1989), 192 Ill. App. 3d 544, 546, 548 N.E.2d 1120, held that defendant's post-arrest statement that he knew many narcotics dealers and would like to "work this [his residential burglary charge] off" was not plea-related and was therefore admissible. The court held that defendant's use of the ambiguous statement did not sufficiently demonstrate that he was initiating plea discussions. Rather, the court stated, it was equally compelling to conclude that he was attempting to trade information about narcotics dealers for the dropping of the charges against him or that he just wanted to go home as he himself admitted.

In *People v. Burns* (1989), 188 Ill. App. 3d 716, 544 N.E.2d 466, the fourth district held that defendant's post-arrest statement en route to the station house, that "he could help out" and that he could "do in someone in Wisconsin" as long as he were not "thrown in jail," was not held to be a plea-related statement and thus was admissible. The court reasoned that the rudiments of a negotiated plea were lacking. There was no indication that defendant intended to enter a guilty plea to the charges for which he was arrested. The record only showed that defendant was bargaining for his immediate release and did not indicate that defendant demonstrated a subjective expectation to negotiate a plea.

In *People v. Tennin* (1984), 123 Ill. App. 3d 894, 463 N.E.2d 202, the second district refused to characterize as plea related defendant's post-arrest statement "I want to make a deal." The court stated that "[d]efendant's subjective expectations *** are not explicit when we look to his sole statement in the record concerning negotiation, *i.e.*, 'I want to make a deal.' " (*Tennin,* 123 Ill. App. 3d at 897, 463 N.E.2d at 205.) The court stated that "defendant here has not made manifest any indication to plead guilty or what the terms are under which he would be willing to bargain." 123 Ill. App. 3d at 897, 463 N.E.2d at 205.

■ The rudiments of a negotiated plea are lacking here. Defendant did not explain what he meant by the terms "cooperation," "future consideration of the charges," and "in consideration of the charges." These words do not manifest that defendant was willing to plead guilty to the charges against him. He did not indicate what the terms were under which he would be willing to bargain. Moreover, defendant testified that he made the statements to keep his name from appearing in the newspaper for his family's sake and to give information to the police to solve a murder he had been accused of. Accordingly, we find no error in admission of defendant's statements.

■ The second issue for review is whether the court erred in entering convictions and sentences for both possession of a controlled substance and possession of that controlled substance with intent to deliver. The People concede that this was error and request the court to vacate the judgment of conviction and sentence as to unlawful possession of a controlled substance.

For the foregoing reasons, the conviction and sentence as to possession with intent to deliver cocaine are affirmed and the conviction and sentence as to possession of cocaine are vacated.

Affirmed in part and vacated in part.

BARRY, P.J., and HAASE, J., concur.